IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NEFRY BÁEZ MUÑOZ<br><br>Plaintiff<br><br>v.<br><br>MMM HEALTHCARE<br><br>Defendant | Civil No. 09-1683 (SEC) |

**INITIAL SCHEDULING CONFERENCE MEMORANDUM**

**TO THE HONORABLE COURT:**

**COME NOW** the parties, plaintiff, Nefry Baez, and defendant, MMM HEALTHCARE, Inc. (hereinafter referred to as "MMM" or "defendant"), through the undersigned attorneys, and very respectfully state, allege and pray as follows:

**I.     FACTUAL CONTENTIONS**

    **A.     Plaintiff's Factual Contentions**

The plaintiff was born in Santo Domingo, Dominican Republic on May 30, 1981. He is not a citizen of the United States; he resides in this jurisdiction with a Unites States Permanent Resident Card. He was hired by the defendant as a health insurance agent on September 2008. During the hiring process, the plaintiff disclosed the fact that he was a citizen of the Dominican Republic, working in this jurisdiction with a Unites States Permanent Resident Card. In order to sell defendant's policies, the plaintiff needed a license to do issued by The Puerto Rico Insurance Commissioner Office. In order for said agency to issue said license the plaintiff needed an endorsement from the defendant and proof of the fact that he possessed an "United States Permanent Resident Card".

MMM Health Care told the plaintiff that they will handle all of the paperwork needed to obtain his insurance license. On September 15, 2008 the plaintiff provided the defendant will all the documents needed to obtain said license, including proof of his United States Permanent Resident Card. Defendant knew that The Puerto Rico Insurance Commissioner Office would issue said license to a Non US Citizen if no proof of the fact that the applicant posses a Unites States permanent Resident Card is not submitted with its application. Nonetheless, defendant removed from plaintiff's application the proof of the fact that he did possessed an United States Permanent Resident Card.

On November 20, 2009 The Puerto Rico Insurance Commissioner Office denied plaintiff's application, stating that he failed to submit copy of his Unites States Permanent Resident Card. The plaintiff refilled his application and eventually got his license. He started selling defendant's policies on December 1, 2008.

On January 2009 defendant's personnel department told the plaintiff that they would perform an audit of his sales figures from September 2008 thru December 2008 to see his he was able to meet his sales quotas during each of said months. They also advised him of the fact that defendant sales policies stated that if he was not able to sell the required quota (20 policies per month), for 3 consecutive months he would get issued a warning; and after 3 warnings were issued against him, he would be fired.

The plaintiff told defendant's personnel department that it was obvious that his sales quotas for the months of September, October and November 2008 would not be met since his license wasn't issued until November 28, 2008 due to the fact that MMM Health Care deliberately removed form his application the copy of his United States Permanent Resident Card.

Nonetheless, they told him that despite that they caused the delay in the issuing process of his license the sales quotas were mandatory. Furthermore, the plaintiff was fired on February 20, 2009 after being issued just one warning for failure to meet his sales quotas. Said drastic measure was not taken against other coworkers, who were US Citizens, and didn't met their sales quotas.

B.     **Defendant's Factual Contentions**

The plaintiff, Nefry Báez (hereinafter referred to as "plaintiff" or "Báez"), alleges that he was discriminatorily dismissed from his employment at MMM because of his national origin under Title VII of the Civil Rights Act, 42 U.S.C. sec. 2000e, *et seq*. ("Title VII"), and Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, sec. 156, *et seq*. ("Law 100").  Plaintiff also alleges that his dismissal abridged Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, sec. 185a, *et seq*. ("Law 80").

MMM is a Medicare Advantage provider in Puerto Rico.  It provides supplementary premium policies with additional health care benefits to Medicare recipients.

MMM's sales structure is divided into different regions across the island, each with a defined sales team, the amount of which depends on the region's needs and demand.  The sales regions are:  Mayagüez, Ponce (1 & 2), Bayamón, Caguas, Humacao, Guayama, Fajardo, Manatí, Carolina, San Juan (1 & 2) Hatillo.

MMM, as a health insurance provider, is regulated by the *Centers for Medicaid and Medical Services* of the U.S. Department of Health and Human Services (hereinafter referred to as "CMS").  CMS regulations provide different types of enrollment and election periods for Medicare beneficiaries.  Each enrollment period has different restrictions as to which changes or enrollments the beneficiaries may engage with regards to their Medicare plan.

From November 15 through December 31 of each year, CMS regulations establish an *Annual Coordinated Election Period* (hereinafter referred to as "AEP"), during which Medicare beneficiaries may change prescription drug plans; change Medicare Advantage Plans; return to original Medicare; or enroll in a Medicare Advantage Plan for the first time.

Likewise, from January 1 through March 31 of each year, CMS regulations establish an *Open Enrollment Period* (hereinafter referred to as "OEP"), which provides Medicare beneficiaries with the opportunity to enroll in, disenroll from, or change a Medicare Advantage Plan.

From April 1 through November 14 of each year, ordinarily Medicare beneficiaries cannot engage in these types of changes or enrollments with regards to their Medicare plan. It is only from November 15 through March 31 that Medicare beneficiaries are allowed to implement the referred changes. Therefore, every year, around September or October, MMM engages in the recruitment of a substantial amount of additional employees to sell MMM's products to Medicare beneficiaries during the AEP and OEP. By the conclusion of such periods, in March of every year, MMM adjusts its sales workforce to the restrictions that apply from April 1 to November 14 to Medicare beneficiaries.

On September 2, 2008, MMM recruited Báez as a salesperson as part of its yearly practice of adjusting its workforce for the AEP and OEP. Báez was assigned to the Bayamón region. In order to engage in his sales duties, Báez, as well as every other health insurance salesperson, had to obtain a license that is issued by the Puerto Rico Insurance Commissioner's Office ("*Oficina del Comisionado de Seguros*") (hereinafter referred to as "PRICO"). PRICO is the government entity in charge of authorizing individuals to become licensed insurance

salespersons. Pursuant to PRICO's regulations, a person cannot engage in the sales of health insurance without having the corresponding license.

MMM is not authorized to issue any kind of license for its employees to sell insurance in Puerto Rico. Moreover, MMM does not participate in any way in the process related to the employee's application for the referred license. The employees are responsible for compiling all the relevant documents and submitting them as part of their application to PRICO. MMM's role in such process is limited to merely advise the employee with regards to the application procedures. MMM is not responsible for PRICO's concession of the license. As such, when recruited, Báez compiled all the relevant documents and submitted his application for PRICO's license. MMM, pursuant to its common practice and policy, did not interfere with Báez' application. PRICO denied Báez' application because he failed to submit a required document. Therefore, Báez' allegation as to MMM's action of not providing him with PRICO's license is misplaced.

By the end of November, 2008, Báez obtained the corresponding license, and commenced his duties as MMM's health insurance salesman. Báez' performance was deficient. He did not meet MMM's expectations as to the required sales average. During December, 2008, and January, 2009, Báez averaged less than 1.3 sales per day.

When the OEP was about to conclude in 2009, MMM evaluated the needs of each sales region of the sales department to conduct the usual and historic reduction in force, while making sure that it would retain the employees that were essential to provide its services. MMM evaluated and analyzed the particular needs of each sales region in order to determine which employees could be retained and which would be laid-off.

With regards to the Bayamón region, MMM considered the sales numbers of its sales team including the months of December, 2008 and January, 2009. Specifically, the company determined that the Bayamón region could operate with only seven (7) salesmen. At that time, the Bayamón region had ten (10) salespersons.  Therefore, MMM decided to lay-off the three (3) employees with the lowest sales performance in the region.  Báez, Carlos Vadi Rosa (hereinafter referred to as "Rosa") and Maritza Zamora (hereinafter referreed to as "Zamora")[1] were the employees in the Bayamón region with the lowest sales average.  As such, they were terminated in the first months of 2009.  The same occurred in the other sales regions.  As a result of the reduction in force, MMM terminated more than 50 salespersons during the first months of 2009.  The national origin of the employees was not a factor considered in the company's decision-making process.  Báez was laid-off on February 20, 2009.

## II.     LEGAL CONTENTIONS

### A.     Plaintiff's Legal Contentions

#### i. Applicable Law

a. Defendant MMM Health Care, dismissal of Mr. Nefri Báez Muñoz constitute discrimination based of his national origin  under 42 USC Sec. 2000e – 2 (a) (1) and Puerto Rico's Law 100 of 1959 (29 L.P.R.A. Sec. 146 et seq.).

b. Defendant MMM Health Care, dismissal of Mr. Nefri Báez Muñoz constitute an unjustified dismissal under Puerto Rico's Law 80 of 1976 (29 L.P.R.A. Sec. 185 et seq.).

c. Immigration Reform and Control Act of 1986 (IRCA).

d. Plaintiff has the right to back pay from the time of his dismissal from February 21, 2009 until the time of judgment, pursuant to 42 USC Sec. 2000e – 5 (g) (1).

---

[1] With regards to Zamora, the company also took into consideration that the PRICO had suspended her license.

6

e. Plaintiff has the right to seek punitive damages of $300,000.00, pursuant to 42 USC Sec. 1981 a (b) (D).

f. Plaintiff has the right to receive a sum for attorney fees, pursuant to 42 USC Sec. 2000e – 5 (k).

g. Plaintiff has the right to a Trial by Jury under Title VII of the Civil Right Act of 1991.

**ii. Applicable Case Law**

a. <u>Espinoza v. Farah Manufacturing Co.</u>, 414 US 86 (1973). The court held that an employer shall not discriminate against a lawful alien citizen. Unjustified dismissal of an lawful alien citizen also violates the Immigration Reform and Control Act of 1986. In the instant case defendant MMM Health Care, willfully, discriminated against the plaintiff by removing the proof of his Unites States Permanent Resident card from his insurance license application and firing him for failing to meet his sales quotas, even thought they caused the delay in the issuing of his license and they applied a different standard in his case (dismissal after one memo instead of three memos), all due to the fact that he is a citizen of the Dominican Republic.

b. <u>García v. Gloor</u>, 618 F. 2d. 264, 269 (1980). Title VII was enacted to prevent discrimination against employees on the basis of immutable characteristics or factors over which individuals have no control, such as country of birth. In the instant case defendant MMM Health Care discriminated and dismissed Mr. Nefri Báez Muñoz based solely on the fact that he was born in the Dominican Republic.

**B.    Defendant's Legal Contentions**

    **A.    Plaintiff's national origin discrimination claim under Title VII is meritless because he fails to establish a *prima facie* case and has a legitimate nondiscrimination reason for plaintiff's termination.**

Plaintiff invokes the Court's jurisdiction under allegations based on national origin discrimination arising under Title VII.  Title VII, as amended, protects individuals against employment discrimination on the basis of race, color, religion, sex, national origin, ethnic background and political ideas.  29 C.F.R. §1606.2.

Under Title VII, MMM would be liable if the proscribed category [in this case national origin] was the motivating factor in the employer's decision.  That is, that Báez' national origin must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  Under Title VII, Báez must establish that his national origin was a determinating factor in the termination of his employment with MMM, and that MMM intentionally discriminated against him on account of his national origin.  Reeves, 530 U.S. at 143; Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Where, as in this case, the plaintiff lacks direct evidence of either type of discrimination, the "familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), comes into play." Goldman v. First National Bank of Boston, 985 F.2d 1113 (1st Cir. 1993) (citations omitted).

In the context of a national origin discrimination claim that in cases dealing with a reduction in force, to establish a *prima facie* case, Báez must prove that

(a) he was a member of a protected class;

(b) possessed the necessary job qualifications and performed the job satisfactorily;

(c) that he was discharged; and

(d) members outside the protected class were retained in the same position and the employer failed to treat national origin equally in implementing the reduction in force. See Laboy v. Dick Corporation, 2006 U.S. Dist.

8

LEXIS 79581 (D.P.R.) quoting Holt v. Gamewell Corp., 797 F.2d 36, 37-8 (1st Cir. 1986); Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000).

The burden to prove a *prima facie* case of national origin is not onerous and, once the plaintiff establishes a *prima facie* case of discrimination, there is a presumption that the employer unlawfully discriminated against the plaintiff. Udo v. Tomes, 54 F.3d 9, 12 (1st Cir. 1995). This presumption "places upon defendant the burden of producing an explanation to rebut the *prima facie* case *i.e.* the burden of 'producing evidence' that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The employer's burden at this second stage is merely one of production; the burden of persuasion remains with the plaintiff at all times. Reeves, 530 U.S. at 142; St. Mary's Honor Center v. Hicks, 509 U.S. 502, 518 (1993); Hidalgo v. Overseas Condado Insurance Agencies, 120 F.3d 328, 334 (1st Cir. 1997). "At this stage, the court's role is "not to second-guess the business decisions of an employer, imposing the court's subjective judgments of which person would best fulfill the responsibilities of a certain job." Rossy v. Roche Products, 880 F.2d 621, 625 (1st Cir. 1989); *quoted* in Soto v. Runyon, 13 F.Supp.2d 215 (D.P.R. 1998).

When the defendant articulates a legitimate and nondiscriminatory reason for its actions, the presumption of discrimination established by the plaintiff's *prima facie* showing vanishes or "drops out of the picture." Reeves, 530 U.S. at 143; St. Mary's Honor, 509 U.S. at 511. In turn, the burden of production shifts back to the plaintiff, who has to show that the defendant's proffered reason for its actions was a pretext for discrimination. Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d at 25-26; Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994). In this third prong, the "plaintiff must do more than simply refute or cast doubt on the

company's rationale" - Medina Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990) - the Plaintiff must show an impermissible discriminatory animus. LeBlanc v. Great American Insurance Co., 6 F.3d at 842; Vega v. Kodak Caribbean, Ltd., 3 F.2d 476, 479 (1st Cir. 1993).

In the present case, Báez cannot establish a *prima facie* case of national origin discrimination under Title VII. Báez fails to establish the second and fourth elements of the *prima facie* case – that is, that he performed his job satisfactorily, and that the employer failed to treat national origin equally in implementing the reduction in force.

First, it is uncontested that Báez' sales performance did not meet MMM's expectations. Báez averaged less than 1.3 sales per day. As such, he fails to meet the second element of the *prima facie* case.

Second, plaintiff cannot establish that MMM failed to treat national origin equally in implementing the 2009 reduction in force. As previously stated, Báez' termination was only one of the dozens of employees that were terminated as part of such reduction in force. Most of the employees terminated were U.S. citizens and Puerto Ricans. Thus, Báez cannot establish that the reduction in force was targeted to eliminate employees of Dominican ancestry.

Assuming *arguendo* that Báez is able to establish a *prima facie* case of discrimination under Title VII, MMM has a legitimate nondiscriminatory reason for Báez' termination. As previously discussed in the factual contentions of the instant motion, Báez was laid-off as part of a reduction in force that affected dozens of MMM employees. Said reduction in force is a common practice of MMM that is conducted every year when the AEP and OEP conclude in March, 2009. As in previous years, MMM executed a reduction in force as to its sales persons in 2009, which was based on the employees' sales perfomance. MMM evaluated

which regions could work with less employees and, based on each region's specific needs, the company terminated the employees wih the lowest sales average in each region.

With regards to the Bayamón region, when MMM evaluated its sales numbers for December, 2008, and January, 2009, Báez was one of its worst performers. Báez had an average of less than 1.3 sales per day. Thus, the company terminated Báez in February, 2009, along with other salespersons from other regions, based in their sales records and the particular needs of each region. In the Bayamón region, Rosa and Zamora were also terminated because of their lagging sales performance. Thus, out of the ten salesmen of the Bayamón region, the company terminated the three who had the lesser amount of sales within the months of December, 2008 and January, 2009.

Báez cannot rebut MMM's legitimate and nondiscriminatory reason for its actions. First, the 2009 lay-off included mostly U.S. citizens and Puerto Ricans. These lay-offs were not targeted towards Dominicans or members of any other protected group. Second, plaintiff has not made reference to any action or remark by MMM that reflects any discriminatory actions towards his national origin.

Finally, as to Báez' allegation that he was discriminated because his application for a PRICO license was incomplete, as previously stated, MMM does not have the authority to issue said license and the responsibility of submitting all of the necessary and relevant documents to the PRICO is the applicant, in this case, Báez. As such, MMM cannot be held accountable for PRICO's denial of Báez' application.

    **B.**    **Plaintiff's national origin discrimination under Puerto Rico's Law 100 of June 30, 1959, as amended, 29 L.P.R.A. §146** ***et seq.***

Puerto Rico's Law 100 of June 30, 1959, provides for civil liability in race, national origin, ethnic background and political ideas and/or ideologies discrimination actions.

11

29 L.P.R.A. **§**146 et seq. For a plaintiff to establish a cause of action for discrimination pursuant to Law 100, it is crucial to follow the procedural scheme specified in Article 3 of the Law. 29 L.P.R.A. '148; Hernández, Galo Beltrán y la Sociedad Legal de Gananciales v. Trans Oceanic Life Insurance Company, 2000 T.S.P.R. 115 (2000). Article 3 of Law 100 creates a presumption of unlawful discrimination in those cases when an employee is terminated or adversely affected without just cause by an employer's decision. P.R. Laws Ann. tit. 29, ' 148; García Pagán v. Shiley Caribbean, 122 D.P.R. 193, 198-199 (1988); Odriozola v. Superior Cosmetic Dist. Corp., 116 D.P.R. 485, 489 (1985).

In order to establish a claim for national origin discrimination pursuant to Law 100, it is the employee's duty to establish the burden of proof of his claim and, in that manner, activate the presumption of discrimination. Id. For a plaintiff to activate the presumption of discrimination, he must establish three elements:

  a.  that there was a dismissal or an adverse employment action;

  b.  that this action was carried out without just cause; and

  c.  must show evidence which demonstrates the form or basis of the discrimination in relation to the dismissal or adverse action.

Hernández, Galo Beltrán, *supra*; Alberty Marrero v. Lcdo. Rodríguez Emma, 2000 T.S.P.R. 166 (2000); Belk Arce v. Martínez, 98 T.S.P.R. 109 (1998). After plaintiff establishes these three elements, the burden of proof is shifted to the employer, who must then establish that no discriminatory action was taken.

In Hernández, Galo Beltrán v. Trans Oceanic Life Insurance Company, the Puerto Rico Supreme Court held that Law 100's discrimination presumption can only be activated

during an evidentiary hearing celebrated. 2000 T.S.P.R. 115. To that effect, the Puerto Rico Supreme Court ruled that:

> … at the hearing it is plaintiff's responsibility to start with the presentation of evidence to support her allegations, <u>before</u> the defendant becomes obligated to refute such evidence. If plaintiff does not present sufficient evidence to support her allegations, defendant does not have to present his defense and the dismissal of the claim at this stage proceeds. <u>Hernández, Galo Beltrán</u>, 2000 T.S.P.R. 115 (Citing Rule 39.2(c) of P.R. Rules of Civil Procedure, 32 L.P.R.A. Ap. IV)(Our translation).

Moreover, in <u>Hernández, Galo Beltrán</u>, the Puerto Rico Supreme Court indicated that Article 3's intention and the presumption established there intends to make it easier for an employee to prove her case, not to relieve or exonerate her from the necessity of presenting evidence to prove her allegations. <u>Id.</u>

In the instant case, there are no facts justifying the activation of any presumption. As previously discussed with regards to Báez' Title VII claim, he cannot establish a cause of action for national origin discrimination. Furthermore, it is uncontested that MMM's actions were not based on a discriminatory animus or because Báez was of Dominican ancestry.

Consequently, Báez fails to establish a cause of action under Puerto Rico Law 100.

    **C.**    **Unjustified dismissal under P.R. Law 80 of March 30, 1976.**

Pursuant to Puerto Rico's Law No. 80 of March 30, 1976, as amended, P.R. Laws Ann. t. 29, sec.185a et seq., an employer cannot terminate a person from his employment, except for just cause, or else, a rebuttable presumption of discrimination arises and the employer has to refute the same. <u>Delgado Zayas</u> v. <u>Hosp. Inter. Med. Avanzada</u>, 137 D.P.R. 643 (T.S. 1994); <u>Beauchamp</u> v. <u>Holsum Bakery of P.R.</u>, 116 D.P.R. 522 (T.S. 1985); <u>Rivera</u> v. <u>National Life</u>, 106 D.P.R. 512 (T.S. 1977). Law 80 sets forth that any employee in commercial business, industry

or other business or place of employment that is terminated from his employment without just cause, has a right to receive from the employer an indemnization as set forth by the law. P.R. Laws Ann. t. 29, sec. 185a. <u>Delgado Zayas</u> v. <u>Hosp. Inter. Med. Avanzada</u>, 137 D.P.R. 643 (T.S. 1994); <u>Secretario del Trabajo</u> v. <u>ITT</u>, 108 D.P.R. 536 (T.S. 1979).

However, the obligation to indemnify an employee under Law 80 arises only when the termination is capriciously made, or without just cause. <u>Mercedes Bus Line</u> v. <u>Tribunal</u>, 70 D.P.R. 690 (T.S. 1949). That is, in those cases in which there is just cause for the termination, the employee has no remedy against the employer.

Law 80 contains certain guidelines to indicate what could constitute just cause for dismissal. <u>Almodóvar</u> v. <u>G.P. Industries</u>, 2001 T.S.P.R. 4; <u>see</u> <u>Figueroa</u> v. <u>Walgreens of San Patricio, Inc.</u>, 2001 T.S.P.R. 150. Accordingly, just cause for the discharge of an employee from an establishment shall be understood to be:

> "a) That the worker indulges in a pattern of improper or disorderly conduct;
>
> (b) The attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment;
>
> (c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.
>
> (d) Total, temporary or partial closing of the establishment operations.
>
> (e) Technological changes or from reorganization, as well as for style, design or nature of the product that is produced or managed by the establishment and changes in the services provided to the public.
>
> (f) Reductions in employment which are necessary due to a reduction in volume of production, sales or earnings, anticipated or that prevail at the moment of the dismissal.

A discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." P.R. Laws Annot. t. 29, §185b. (Emphasis added).

As previously established, Báez' employment with MMM ended due to a reduction in force that was undertaken during the first months of 2009. According to the above, Báez' employment assignment termination was for just cause and pursuant to Law 80 requirements. As such, his unjustified dismissal claim must be dismissed.

### III.    WITNESSES

A.    **Plaintiff's Witnesses**

**i. Fact Witnesses**

The plaintiff will bring a person designated by The Puerto Rico Insurance Commissioner Office to certify that said agency received from defendant MMM Health Care its application without proof of his United States Permanent Resident Card; to testify of the fact that plaintiff's application was rejected due to the fact that said proof was not attached; and to testify about the fact that the plaintiff refilled its application and his license was issued on November 28, 2008.

**ii. Expert Witnesses**

The plaintiff is in the process of hiring an expert witness for his monetary and mental damages. As soon as he finds one that he can afford; its name, address, phone number and curriculum vitae will be forwarded to the defendants. A copy of the expert witness report will be forwarded to the defendants within 30 days.

B.   **Defendant's Witnesses**

  1. Michelle Ramírez

  2. Vanessa Santiago Betancourt

  3. Iris Pastrana

  4. José Moreno

  5. Brenda Real Torres

  6. In relation to expert witnesses, defendant requests a period of 45 days after plaintiff issues his expert witness report to depose plaintiff's expert witness and to provide our own expert witness report.

  7. Defendant reserves the right to amend this list and use additional witnesses. Furthermore, Defendant reserves the right to announce any additional witnesses that might become apparent from the pending discovery, and if so, will promptly notify Plaintiff in order for said party to conduct discovery to that effect.

.

IV. **DOCUMENTARY EVIDENCE THAT EACH PARTY HAS AT THIS TIME TO PROVE ITS CONTENTIONS.**

  A.   **Plaintiff's Documentary Evidence**

The plaintiff had already provided defendant MMM Health Care the following documents during the Rule 26 Meeting:

  a. Plaintiff's Right to Sue Letter, issued by the E.E.O.C.

  b. Copy of his earning statements.

  c. Letter of dismissal.

  B.   **Defendant's Documentary Evidence**

16

1. Relevant parts of plaintiff's personnel file, including the following documents: August 26, 2008 employment offer; August 29, 2008 employment contract; September 2, 2008 receipt of MMM's employees' manual; and September 2, 2008 receipt of MMM's policies (including H.R. policies).

2. Defendant's employees' manual & policies.

3. Defendant's anti-discrimination policies and documents.

4. Defendant's documents related to plaintiff's application for the PRICO license.

5. Defendant reserves the right to amend this list and use additional documents. Furthermore, Defendant reserves the right to announce any additional documents that might become apparent from the pending discovery, and if so, will promptly notify plaintiff in order for said party to conduct discovery to that effect.

**V.     DISCOVERY**

    **A.     Plaintiff's Discovery**

The plaintiff will be sending its first set of interrogatory and request of production of document to the defendant next week. The plaintiff is currently finishing its answers to the interrogatories and request for production of documents sent by the defendant. Depositions are yet to be coordinated with defendant's counsels. The plaintiff plans to depose the witnesses disclosed by the defendant at the Rlu 26 Meeting.

    **B.     Defendant's Discovery**

1. Defendant wishes to depose plaintiff and plaintiff's witnesses.

2. Defendant wishes to depose plaintiff's expert witnesses, if he has any.

      3.      Defendant sent a First Set of Interrogatories and Requests for Production of Documents to plaintiff on October 9, 2009.

## VI. OTHER MATTERS

### A. Plaintiff's Other Matters

The plaintiff sent today a good faith settlement offer to the defendant.

### B. Defendant's Other Matters

None at this time. A Motion for Summary Judgment will be filed after the conclusion of the discovery proceedings in the case at bar.

**WHEREFORE**, the parties respectfully request that this Honorable Court accept the parties' Initial Scheduling Conference Memorandum.

**WE HEREBY CERTIFY** that, on November 10, 2009, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties of record.

In San Juan, Puerto Rico, this 10th day of November, 2009.

| | |
|---|---|
| s/Héctor Eduardo Pedrosa Luna<br>Héctor Eduardo Pedrosa Luna<br>USDC-PR 223202<br>Attorney for the plaintiff<br><br>P. O. Box 9023963<br>San Juan, PR 00902-3963<br>Tel. (787) 920-7983; (787) 764-7511<br>e-mail: hectorpedrosa@gmail.com | s/Enrique R. Padró Rodríguez<br>Enrique R. Padró Rodríguez<br>USDC-PR 219602<br><br>s/Pedro A. Busó García<br>Pedro A. Busó García,<br>USDC-PR 222511<br>Attorneys for the defendant<br><br>**FIDDLER, GONZÁLEZ & RODRÍGUEZ PSC**<br>PO Box 363507<br>San Juan, PR 00936-3507<br>Tel: (787) 759-3137 / 787-759-3176<br>Fax: (787) 250-7565<br>e-mails: epadro@fgrlaw.com;<br>pbuso@fgrlaw.com |

4508-109 - #780996